UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.  ) | Docket No 24-cr-10172-IT |
| ) | |
| ) | |
| BRYAN HORGAN  ) | |
| ) | |

### Bryan Horgan's Sentencing Memorandum

On June 23, 2025, Mr. Horgan entered a guilty to a one-count indictment charging possession of child pornography. He submits this sentencing memorandum in support of the parties' joint recommendation for a 120-month term of incarceration followed by 10 years of supervised release. This binding plea disposition represents a reasonable application of the sentencing guidelines and , adequately reflects the seriousness of the offense before the Court and balances the need to punish with other properly considered sentencing factors. This proposed sentence – which includes not just a lengthy sentence of imprisonment– also includes registration obligations and strict monitoring by United States Probation. It is consistent with the factors set forth in 18 U.S.C. § 3553(a) and will result in a sentence that is sufficient, but not greater than necessary, to effectuate the purposes of sentencing. *United States v. Kimbrough*, 552 U.S. 85 (2007); *United States v. Booker*, 543 U.S. 220 (2005); *United States v. Martin*, 520 F.3d 87 (1st Cir. 2008); *United States v. Rodriguez*, 527 F.3d 221 (1st Cir. 2008).

Further, Mr. Horgan requests that this Honorable Court recommend to the Bureau of Prisons ("BOP") that he be designated to a facility, commensurate with this security level, in Massachusetts – specifically, FMC Devens, to permit him to engage in sex offender treatment[1]

---

[1] *See* Federal Bureau of Prisons, Custody & Care: Sex Offenders, listing FMC Devens as one of the nine

and to be closer to the only family he has and the only community he has ever known, as he begins this sentence at the age of sixty. His family, who rejects this serious criminal behavior, remains a strong source of support for Mr. Horgan and will be there for him throughout the duration of his sentence and upon his ultimate return to community. His eldest brother writes:

> I believe that I have a perspective that not all family members of defendants have as I worked in corrections for over three decades. As the Superintendent of three different jails in Massachusetts, I came to know that many people who are incarcerated are there because they made bad decisions that negatively impacted themselves, their families and their communities… I am aware of the seriousness of the crimes that Bryan has pleaded guilty to. In no way do I condone these actions and it has caused me to reflect a great deal on the impact on the victims. I know that you are or will be made aware of the specifics of his actions and of his prior conviction. The purpose of my letter is to tell you about some of Bryan's positive characteristics and to paint a more complete profile of who he is." Exhibit A.

Mr. Horgan faces a long period of incarceration pursuant to the plea agreement in this case. Following his period of isolation from the community, he will be monitored in the community for a period of 10 years with standard and special conditions of supervision designed to promote safety, stability, and promote rehabilitation through counseling and treatment.

I.   **Mr. Horgan's History and Characteristics**

Mr. Horgan was born and raised in a strong middle-class family in the Hyde Park community of Boston and lived there for most of his life. He grew up in a large, tight-knit Irish Catholic family, the second oldest of six children. His father, who passed away in 2014, retired as Boston's Deputy Fire Commissioner. His mother, now 86 years old, raised all six children, managed the household, while also working long hours outside the home as a Registered Nurse.

---

BOP facilities that offer sex offender treatment:
https://www.bop.gov/inmates/custody_and_care/sex_offenders.jsp

2

On its face, Mr. Horgan had a happy childhood – his parents had a strong marriage and worked hard to provide for their family. Mr. Horgan went to parochial school alongside his siblings. He attended Mass daily, and on Sundays with his family. Outside of school hours, he also participated in Cub Scouts and Boy Scouts. He was close with his brothers and sisters, and fondly recalls family vacations.

On the inside, though, Mr. Horgan privately suffered. When he was a child, he was the victim of abuse, which he was too afraid to disclose as a child (See, PSR ¶ 47.) He did not receive any counseling following this abuse, and instead internalized what he experienced. As he grew older, he struggled with his sexual identity, especially against the backdrop of the traditional Catholic community he was raised in. Mr. Horgan felt immense shame about the very essence of who he was. This shame led to depression and feelings of hopelessness. PSR ¶ 46. Without other available coping strategies, he turned to alcohol to numb how he was feeling. His brother noted in the PSR that he believes, "…the clash between (his) religious upbringing and homosexuality may have led to feelings of anxiety and depression as well as substance abuse." PSR ¶ 57. This use of alcohol evolved into abuse of other drugs as Mr. Horgan grew older, impacting his life in many negative ways before he was able to achieve sobriety later in life. See PSR, ¶¶ 66-73.

Mr. Horgan had difficulties both socially and academically while enrolled at Boston Latin High School. PSR ¶ 74. He transferred in the latter part of high school to Catholic Memorial where he graduated with his diploma in 1984. Id. Following graduation he enrolled in the University of Massachusetts where he hoped to study psychology. Unfortunately, his substance use continued and began to affect his grades, forcing him to withdraw after two years without a certificate. The years following were tumultuous, as he continued to abuse drugs and alcohol to mask continued

3

struggles with his identity and shame from his untreated childhood trauma. Mr. Horgan was able to maintain employment for periods of time despite his substance use disorder, including working at Boston City Hall and later at the HIV/AIDS Action Committee. PSR ¶¶ 77-78. During this time period he began to accept who he was as he was exposed to more people who were living their lives openly as homosexual men. Still, he was worried about being fully accepted by his family and carried the secret from them for longer. PSR ¶ 46.

Mr. Horgan's drug use escalated into regular methamphetamine use for almost 17 years after he was introduced to the drug, between 2000-2017. PSR ¶ 70. Although he completed short-term substance use treatment programs in the late 1990's and later in 2007, it was not until 2017 that he finally achieved lasting sobriety (November 17, 2017). PSR ¶ 73. Since that time, Mr. Horgan has regularly attended AA, and Crystal Meth Anonymous for years. His brother Gerard writes: "…in his early 50's, Bryan met his substance use disorder head on and became active in AA. He worked hard on his sobriety which he has maintained for over six years. I had the privilege of attending two of his anniversary meetings at AA and was struck by how many people came up to me to tell me how much of a positive influence Bryan had been on their journeys toward sobriety." Exhibit A.

## II.     Nature of the Offense

The nature of the offense is straightforward and described fully in the Presence Report. PSR ¶¶ 7-17. Massachusetts State Police Cyber Crimes Unit received a tip from NCMEC that a number of files believed to be child pornography had been uploaded to a "cloud" Microsoft OneDrive account. The cyber tip also provided the user ID and IP address associated with the uploading account, which led the investigation to Bryan Horgan's email and IP address. Pursuant

to a search warrant, agents seized devices in Mr. Horgan's home which included images and video files containing child pornography. PSR ¶¶ 11-15.

Mr. Horgan's prior conviction in 2007 provides the basis for the 10-year mandatory minimum sentence required of the Court here. For that crime he served a sentence of 2 years followed by a 5-year probation period. PSR ¶ 16, 38.

### III. Ten Year Sentence is Sufficient Based on the Guidelines, Statute, and 3553(a) Factors

The final Presentence Report calculates the guidelines as 120 months based on the statutory mandatory minimum sentence required in this case. PSR at 22. Absent that mandatory minimum requirement, the PSR would otherwise calculate the guideline range as a total offense level 28, criminal history category II, guideline range 87-108 months. The statutory supervised release period is between 5 years to life. Here, the parties jointly recommend a 10-year period of incarceration followed by a 10-year term of supervised release, significantly longer than the minimum required term of supervision in the community. The parties' guideline calculation resulted in a total offense level of 24, which would have otherwise resulted in an advisory guideline range of 57-71 months absent the statutorily required mandatory minimum sentence of 120 months. PSR ¶ 3, 85.

Here, the statutory provisions control what is a minimally sufficient sentence. The parties agree, and urge the Court to accept, the terms of the proposed resolution: 10 years of custody followed by 10 years of supervision in the community. PSR ¶ 3. Mr. Horgan is indigent and cannot afford a fine, so no fine should be imposed in this case. This is a significant sentence, and one that is supported by the 3553(a) factors.

A. <u>Seriousness and Deterrence</u>

A period of 10 years of custody for possession of child pornography is undeniably a serious sentence for a 60-year old man who has not previously served such a sentence. This sentence is five times as long as the sentence imposed in his prior underlying conviction with twice the period of supervision. PSR ¶ 38 (2 years committed, followed by 5 years of probation). Given his age, the period of supervision will result in his being under oversight likely into his 80's. This considerable sentence will serve as a significant personal deterrent for Mr. Horgan. He will serve this sentence in a federal prison, possibly far from his family and sources of support. A 10-year sentence similarly offers significant general deterrence for the public generally, sending a strong message to other would-be child pornography offenders about the severe consequences for this conduct.

B. <u>Avoiding Unwarranted Sentencing Disparities</u>

The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct is codified in 18 U.S.C. § 3553(a)(6). The U.S. Sentencing Commission provides limited data of dispositions for defendants whose primary guideline was U.S.S.G. § 2G2.2: specifically, in the last five fiscal years (2020-2024), 98 offenders with Mr. Horgan's same criminal history category (II) and offense level (28) were sentenced in federal court. The average sentence imposed was 103 months, and the median was 120 months. PSR ¶102. These numbers are entirely consistent with the proposed sentence of 120 months in this case.

C. <u>Protection of the Public</u>

Should the Court impose the requested sentence of 120- months and ten years of supervised

6

release, the overall sentence will span 20 years of Mr. Horgan's life under court and/or prison supervision. Though the 120-month sentence contemplates incapacitation during that period, the limitations on his conduct and life as anticipated on supervised release are severe and contribute towards the sentencing goal of protecting the public. Moreover, when Mr. Horgan is released from prison, he will be subject to both the sex offender registry laws and stringent monitoring by probation, which will continue to protect the public and mitigate his risk of recidivism.

D. Need for Treatment

With a 120-month sentence, Mr. Horgan will be eligible to participate in treatment programs in the Bureau of Prisons, including sex offender treatment, and his request for a recommendation to FMC Devens demonstrates his willingness to engage in that treatment. His continued sex offender treatment and registration will be mandated for the 10 years that he will be monitored in the community by U.S. Probation, and his anticipated treatment participation will reduce his risk of recidivism.[2] No longer term of incarceration is necessary to afford him the treatment that he will be eligible to receive during a 120-month sentence and while on supervised release.

F.  120-Month Sentence and the Collateral Consequences of Conviction

For Mr. Horgan, this conviction, supervision, and registration requirements will continue to follow him for the rest of his life. As several courts have recognized, collateral consequences of conviction, such as registration as a sex offender, are relevant to the "need" for the sentence

---

[2] *See* U.S. Dep't of Justice, Center for Sex Offender Management, *Understanding Treatment for Adults and Juveniles Who Have Committed Sex Offenses* 10 (2006); *See* U.S. Sent'g Comm'n, *Report to the Congress: Federal Child Pornography Offenses* (2012) ["*Child Porn Report*"] at 278 & n. 31(quoting Center of Sex Offender Management, The Comprehensive Approach to Sex Offender Management 5 (2008)) (finding that appropriate treatment interventions are associated with very significant lower rates of recidivism).

7

imposed to reflect just punishment. *See, e.g., United States v. Garate*, 543 F.3d 1026, 1028 (8th Cir. 2008) (district court's consideration of the lasting effects of being required to register as a sex offender is appropriate mitigating factor in sentencing); *United States v. Autery*, 555 F.3d 864, 875 (9th Cir. 2009) (characterizing sex offender registration as "a punishment of lifelong significance (which can cause the listed person to become so socially ostracized that he has difficulty living in many communities)"). These collateral consequences of conviction – though civil and not intentionally punitive in nature – should be considered in the calculus of a sentence's reasonableness and parsimony. Here, those requirements will be part of his supervised release conditions

### IV.     Objections to Certain Special Supervised Release Conditions.

Under 18 U.S.C. § 3583(d), the court may order special conditions of supervised release, only to the extent that such conditions:

> (1) are reasonably related to (a) the nature and circumstances of the offense and the history and characteristics of the defendant, (b) are designed to afford adequate deterrence to criminal conduct, (c) protect the public from future crimes of the defendant, and (d) provide the defendant with needed education or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (2) involve no greater deprivation of liberty than is reasonably necessary for the purposes of affording adequate deterrence to criminal conduct, protecting the public from further crimes of the defendant, and providing the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; and
>
> (3) are consistent with any pertinent policy statements issued by the Sentencing Commission pursuant to 28 U.S.C. § 994(a). *See also* U.S.S.C. § 5D1.3(b).

Mr. Horgan submits proposed revision(s) to these supervised release conditions set forth herein are consistent with 18 U.S.C. §3583(d).

The First Circuit recommends against taking a "broad-brush, untailored approach to

sculpting the conditions of supervised release." *United States v. Hinkel*, 837 F.3d 111, 125 (1st Cir. 2016) (vacating, *inter alia*, conditions of supervised release that barred the defendant from accessing the internet without preapproval from Probation and barred the defendant from accessing 'sex-related' sites). Where "the ultimate purpose of supervised release is its eventual end and the offender's return to society," the First Circuit endorsed "the value of a release program as a rehabilitative tool mirrors the extent to which the conditions of supervised release simulate life after the program's end." *See United States v. Perazza-Mercado*, 553 F.3d 65, 71 (1st Cir. 2009), quoting Frank E. Correll, Jr., "You Fall into Scylla in Seeking to Avoid Charybdis": The Second Circuit's Pragmatic Approach to Supervised Release for Sex Offenders, 49 Wm. & Mary L.Rev. 681, 703–04 (2007). Mr. Horgan does not seek to remove these conditions but to modify the language so that it is more precise, less broad, and will appropriately balance the need to limit deprivations of liberty to achieve the goals of sentencing.

- ***Special Condition 4: Parameters of Monitoring Software***: You must allow the installation of computer internet monitoring software on approved internet capable devices, but may still use a computer for work purposes that has been previously approved by the Probation Office. The program(s) used will be designed to identify, for the Probation Office, the viewing, downloading, uploading, transmitting, or otherwise using **any images or content of a sexual or otherwise inappropriate nature**. You must not attempt to remove or otherwise defeat such systems, and must allow the Probation office to examine such computer and receive data from it at any reasonable time.

While Mr. Horgan does not object to the use of monitoring software, he does object to the vague and overly broad use of the software to identify "any images or content of a sexual or otherwise inappropriate nature" and instead requests that the condition track the statutory definition of sexually explicit materials under 18 U.S.C. § 2256(2)(A). He proposes that the monitoring software be set up only to identify sexually explicit material, as defined in 18 U.S.C.

9

§ 2256(2)(A) and as set forth in Special Condition 6. The condition as proposed permits the Probation Department to review all content on a defendant's phone, including, for example, communications between counsel and client. It thus often captures material far afield from potentially contraband images. Mr. Horgan requests that this Honorable Court substitute the following language for the second sentence of this condition: "The program(s) used will be designed to identify, for the Probation Office, the viewing, downloading, uploading, transmitting, or otherwise using any images or content of sexually explicit materials as defined in 18 § 2256(2)(A)."

- ***Special Condition 11: Disclosure of Usernames and Passwords***: *You must disclose all account information relative to internet access, social networking, and email, including user names and passwords, to the Probation Office[.]*

Mr. Horgan objects to a condition that requires that he disclose usernames and passwords of all accounts relative to internet access, social networking, and email to his probation officer. Such a condition is an extreme invasion of privacy that is not warranted given all the other ways probation will be monitoring his internet usage. Instead, Mr. Horgan submits that a condition requiring disclosure of usernames and passwords would be appropriate only if there is reasonable suspicion that such accounts are being used in connection with sexually explicit materials as defined in 18 U.S.C. § 2256(2)(A). Mr. Horgan requests that this Honorable Court substitute the following language for the first sentence of this condition instead: *"You must disclose all account information relative to internet access, social networking, and email, including user names and passwords, to the Probation Office which may access such accounts only upon reasonable suspicion that such accounts are being used in connection with sexually explicit materials as defined in 18 § 2256(2)(A)."*

10

## CONCLUSION

For the foregoing reasons, the Court should impose 120 months followed by ten years of supervised release, with conditions to include sex offender treatment, and mental health counseling, to assist him in rehabilitation and to address prior trauma. This requested sentence reflects the nature and circumstances of Mr. Horgan's offense and his history and characteristics, and is "sufficient, but not greater than necessary" to serve the purposes of sentencing set forth at 18 U.S.C. § 3553(a)(2). *United States v. Kimbrough*, 128 S.Ct. 558 (2007); *United States v. Booker*, 125 S.Ct. 738 (2005); *United States v. Martin*, 520 F.3d 87 (1st Cir. 2008); *United States v. Rodriguez*, 527 F.3d 221 (1st Cir. 2008).

This 10-year sentence is in keeping with the sentencing pattern of circuits throughout the country as well as this particular district, for people in his criminal history category with this offense level. Most importantly, this is a sentence that is serious – a ten-year period of isolation from society, followed by ten years of supervision in the community - is sufficient. It sends a message. It will profoundly affect Mr. Horgan's life, and will protect the public. For these reasons we ask the court to impose our requested sentence of 120 months, with the 10 years of supervised release to follow.

Finally, Mr. Horgan asks that the court recommend placement at FMC Devens where he can participate in sex offender treatment as part of his sentence.

11

Respectfully submitted,

BRYAN HORGAN
By his Attorney,

*/s/ Cara McNamara*
Cara McNamara,
 B.B.O.#712096
Assistant Federal Public Defender
Federal Public Defender Office
51 Sleeper Street, 5th Floor
Boston, MA 02210
Tel: 617-223-8061

CERTIFICATE OF SERVICE

    I, Cara McNamara, hereby certify that this document filed through the ECF system will be sent electronically to the registered participant(s) as identified on the Notice of Electronic Filing (NEF) on October 16, 2025.

*/s/ Cara McNamara*
Cara McNamara